IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PATRICK TEETERS,

    Plaintiff,

v.                                                  Civil Action No.   2:25-cv-00552

APPALACHIAN POWER COMPANY,

    Defendant.

## COMPLAINT

For his Complaint against the Defendant, the Plaintiff alleges and says as follows:

1. That the Plaintiff Patrick Teeters ("Plaintiff") at all times material hereto was a citizen and resident of Chattaroy, Mingo County, West Virginia.

2. That Plaintiff Teeters, at all times material hereto, was a lineworker at Inter Mountain Cable, Inc. ("Inter Mountain") for approximately 16 years, which is a for profit corporation in the business of communications equipment manufacturing for wireless communication, including maintaining cable television lines.

3. That Defendant Appalachian Power Company ("APCO") is a for profit foreign corporation with its principal office address located at 1 Riverside Plaza, Columbus, OH 43215. Further, Defendant APCO is engaged in the utility business of electric power generation, transmission, and distribution and is authorized to do business in the State of West Virginia.

4. That Defendant APCO is a corporation authorized to do business in the State of West Virginia, and at all times mentioned herein is a for profit foreign corporation with its

1

principal office address located at 1 Riverside Plaza, Columbus, OH 43215, according to published records, and is engaged in the utility business of electric power generation, transmission, and, here, distribution regularly by construction, maintenance, and inspection for purposes of safety of the wooden power pole, conducting and transacting business in Cabell County, Mingo County, and Kanawha County, and throughout the State of West Virginia and other states.

5. That Defendant APCO is a wholly owned subsidiary of American Electric Power ("AEP"), and, upon information and belief, AEP is a holding company with no employees, no operations, nor decision-making authority.

## JURISDICTION AND VENUE

6. That both jurisdiction and venue in this civil action are proper in that the United States District Court for the Southern District of West Virginia has original diversity jurisdiction of this action pursuant to 28 U.S. § 1332 inasmuch as the matter in controversy is based upon the Plaintiff's claims herein exceed the sum of $75,000.00 exclusive of interest and costs, and is between citizens and residents of different states.

## FACTS

7. That on June 5, 2025, Plaintiff Teeters was a lineworker employed by Inter Mountain, and on that day was required to splice new coaxal cable installed by Inter Mountain following, upon information and belief, the falling of a tree causing issues with power lines, cable lines and telephone lines in the area.

8. That upon arrival to splice the coaxal cable which required Mr. Teeters to ascend an industry approved fiberglass ladder to reach the cable located below power lines on the wood pole equipment ("wood pole") in order to perform his work functions on the cable, Mr. Teeters performed an inspection of the wood pole, identified as 995B6, and located on Mate Creek Road,

Matewan, West Virginia, to determine if the wood pole was capable of sustaining necessary stress to perform the work on said pole, including a visual inspection of the condition of the pole for buckling or unusual angles, cracks, holes, knots, and decay, and a test of applying force to the pole, including kicking the wood pole to determine stability.

9. That following Mr. Teeters' visual inspection and stability test of the wood pole, Mr. Teeters determined the wood pole appeared to be capable of sustaining the stress of himself and his equipment to perform the function of accessing the cable line of his employer Inter Mountain, which leased the telephone pole to use and access the pole and other poles throughout West Virginia locations as well, to perform his job of splicing the cable line. Further, Mr. Teeters did not identify any form of flag on the wood pole to warn that the wood pole should not be accessed by an approved fiberglass ladder as a means to climb the wood pole to perform Mr. Teeters' work functions.

10. That as Mr. Teeters was ascending an approved fiberglass ladder to reach the cable located on the pole, the wood pole failed and fell, causing the ladder to move and lose its resting place and fall to the ground, resulting in Mr. Teeters falling a considerable distance of approximately twenty-five (25) feet to the ground and Mate Creek, resulting in a laceration to the head, acute kidney injury, and severe lower limb fracture injuries requiring immediate hospitalization and surgery described below.

11. That Defendant was negligent and careless in not inspecting, testing and maintaining its wood pole which upon information and belief had been in use since 1982, including not recording and remedying defects, and including the prompt repair, disconnect, or isolation of the wood pole. That as a direct and proximate result of Defendant negligently and carelessly failing to inspect, test, and maintenance the wood pole, the wood pole fell, causing Mr.

Teeters's industry approved fiberglass ladder to move and fall resulting in his fall of approximately twenty-five (25) feet to the ground and Mate Creek, causing serious and permanent injuries, requiring surgery for his right lower extremities and acute kidney injury.

12. That Defendant APCO had a non-delegable duty as owner of the wood pole to inspect the wood pole regularly for safety and stability and to exercise reasonable care in maintaining the leased wood pole in a condition that meets health and safety codes and regulations so that the wood pole is safe for workers, including workers of employers that lease said wood pole such as Mr. Teeters, which it knew accessed and regularly climbed the pole, and breached that duty.

13. That his injuries to his lower limbs were severe and required immediate transport to a hospital and surgery for fixation of right lower extremities and acute kidney injury, laceration on the top of his head, possible pulmonary contusions, acute kidney injury, fracture of shaft of right tibia and fibular and fracture of shaft of left tibia and fibula, including nondisplaced oblique sagittally oriented fracture through the tibial plateau, comminuted midshaft fibular fracture with over-riding fragments and butterfly fracture, and additional subtle nondisplaced fracture of the anterior process of the calcaneus along the plantar lateral margin.

14. That as a direct and proximate result of the foregoing actions and/or conduct of Defendant, Plaintiff Teeters is permanently and seriously injured, has recurrent infection requiring hospital admission, and has been required to have medical care and treatment, surgery, physical therapy, and been prescribed various medications for treatment and to alleviate his pain, and will require further medical care and treatment, physical therapy, and medication to enable him to continue to meet his needs in the future.

15. That as a direct and proximate result of the negligence and carelessness of the Defendant and its failure to exercise reasonable care, the Plaintiff suffered painful, serious and permanent injury and is permanently vocationally impaired and not physically able to return to work.

## DAMAGES

16. That as a further proximate result of the negligence of Defendant as described herein, Plaintiff Teeters has in the past, and will in the future, suffer the following:

    a. Physical injury and disabilities which include fracture of shaft of right tibia and fibula and fracture of shaft of left tibia and fibula,

    b. Physical pain and suffering of the body and mind,

    c. Loss of ability to enjoy life and interference with activities of daily living and employment,

    d. Total and permanent disabling injury interfering with his ability to enjoy life and return to work,

    e. Emotional distress and mental anguish,

    f. Medical, hospital, medication, treatment and physician bills, and prescription and physical therapy costs,

    g. Vocational disability, and

    h. Economic loss for the loss of income.

## PUNITIVE DAMAGES

17. Plaintiff hereby adopts and incorporates by reference each of the above paragraphs as if fully rewritten herein.

18. At all times relevant hereto, the Defendant APCO's conduct and actions toward Plaintiff as alleged herein exhibit such conscious, reckless, and outrageous indifference to the

health, safety, and welfare of others, including to the Plaintiff, so as to justify an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant APCO for compensatory damages to be determined by a jury according to the law of the State of West Virginia, and for punitive damages against Defendant in an amount that is fair and reasonable as shown by the evidence, together with pre and post judgment interest, attorney's fees and costs.

A JURY TRIAL IS DEMANDED.

PATRICK TEETERS<br>
By Counsel

/s/ *Guy R. Bucci*

Guy R. Bucci, Esquire (WVSB #0521)
Ashley N. Lynch, Esquire (WVSB #11714)
108 ½ Capitol Street, Suite 200
Charleston, West Virginia 25301
(681) 265-1960
ashleynlynch@outlook,com
guy.bucci@outlook.com

A. J. Ryan, Esquire (WVSB #3223)
RYAN & RYAN
P. O. Box 1196
Williamson, West Virginia 25661
(304) 235-7510
aj@wvdsl.net

*Counsel for Plaintiffs*